IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JASON GALINDO, as next friend and Conservator of the Estate of Samantha Behrens, a Minor;<br><br>Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY, ARCHER-DANIELS-MIDLAND COMPANY, ADM TRANSPORTATION COMPANY, and ALEXANDRIA AGUALLO,<br><br>Defendants. | 4:24CV3070<br><br><br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Plaintiffs' Motion to Remand (Filing No. 22), the United States Magistrate Judge's[1] Findings and Recommendation (Filing No. 41) recommending that the motion be granted, defendants BNSF Railway Company (Filing No. 46) and Archer-Daniels-Midland Company and ADM Transportation Company (collectively, the "ADM defendants")'s Statements of Objections to the Magistrate Judge's Findings and Recommendations (Filing No. 43). The Court will overrule the objections, adopt the findings and recommendation, and grant the motion to remand.

PROCEDURAL BACKGROUND

This case arises from a 2019 accident in Butler County, Nebraska. Defendant Alexandria Aguallo was driving on Highway 92 in the "early morning hours" of October 22. (Filing No. 1-1

---

[1] In their briefing, one of the parties referred to the Magistrate Judge as the "magistrate." A Magistrate Judge is a judge and should be referred to as one in any documents filed with the court. See 28 U.S.C. § 631(a).

at 209). Her then-six-year-old daughter, Samantha Behrens, was one of several passengers in the car. (Filing No. 1-1 at 209). At around 7 a.m., Aguallo's car collided with the side of a BNSF train hauling tank cars owned by the ADM defendants. (Filing No. 1-1 at 209). The plaintiff, as next friend and conservator of Behrens' estate, filed this action in state court, bringing negligence claims against each defendant. (Filing No. 1-1 at 207-215). The plaintiff alleged that Behrens sustained "significant and substantial injuries" in the collision. (Filing No. 1-1 at 210). For her part, Aguallo brought crossclaims against BNSF and the ADM defendants for her own injuries sustained in the accident and for Behrens' "medical expenses," "in home nursing services," and "loss of [Behrens'] services through the age of majority." (Filing No. 1-1 at 183).

Litigation proceeded from there in state court. In March 2024, Aguallo produced an Order of Discharge dated May 4, 2020 in discovery—she had filed a Chapter 7 voluntary petition for bankruptcy in January 2020. (Filing No. 1-3 at 3; Filing No. 25-1); *see In re Aguallo*, Case No. 20-40090 (Bankr. Neb. Jan. 20, 2020).

In response, the ADM defendants timely removed this case to federal court.[2] (Filing No. 1). The ADM defendants asserted in their notice of removal that "Behrens was not scheduled as a creditor" in the bankruptcy proceeding, so any claim Behrens had against Aguallo was discharged by the May 4, 2020 Order. (Filing No. 1 at 2). Thus, even though both Behrens[3] and Aguallo were Nebraska residents, the ADM defendants argued that "by virtue of her bankruptcy discharge, Aguallo is fraudulently joined to this litigation, and her citizenship is therefore not to be considered for diversity purposes."[4] (Filing No. 1 at 4). With Aguallo out of the picture, the ADM defendants contend that diversity jurisdiction exists under 28 U.S.C. § 1332(a). (Filing No. 1 at 3).

---

[2] BNSF consented to removal. (Filing No. 8).

[3] "[W]hen a minor sues, it is the domicile of the minor and not that of the next friend, suing on his or her behalf, that is scrutinized for purposes of the diversity jurisdiction of the federal courts." 13E Arthur R. Miller, *Federal Practice and Procedure* § 3615 (3d ed.); *see Dunlap by Wells v. Buchanan*, 567 F. Supp. 1435, 1436 (E.D. Ark. 1983) ("[T]he domicile of the ward and not that of the guardian is determinative of the diversity question.") *aff'd*, 741 F.2d 165 (8th Cir. 1984).

[4] The ADM defendants also made a related argument that "Aguallo may be properly realigned with Plaintiff in this matter for jurisdictional purposes." (Filing No. 1 at 4).

2

The plaintiff timely moved to remand this case. (Filing No. 22). The Magistrate Judge recommended the motion be granted, reasoning that Aguallo was not fraudulently joined and that she should not be realigned as a plaintiff for jurisdictional purposes. (Filing No. 41). BNSF and the ADM defendants timely objected to the Findings and Recommendation. (Filing No. 46; Filing No. 43).

## DISCUSSION

BNSF and the ADM defendants raise several arguments as to why the Findings and Recommendation should be reversed, but none persuade the Court.[5] *First,* the ADM defendants argue that the "standard applied by the [Magistrate Judge] in this case was incorrect and imposed a higher legal standard on ADM and ADMTC than is required." (Filing No. 44 at 4). They fault the Magistrate Judge for noting that "[f]raudulent joinder does not exist when 'there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved.'" (Filing No. 44 at 4). That standard, in their view, "gives the plaintiff additional benefit of the doubt[.]" (Filing No. 44 at 4). The defendants say the correct standard merely requires the defendant resisting remand to "show that the plaintiff's claim against the diversity destroying defendant has no reasonable basis in fact and law." *Halsey v. Townsend Corp. of Ind.*, 20 F.4th 1222, 1226 (8th Cir. 2021). The Court disagrees.

The rule from *Filla v. Norfolk S. Ry. Co.,* 336 F.3d 806, 810 (8th Cir. 2003) governs motions like these, and that is what the Magistrate Judge applied. There, the Eighth Circuit held that "a proper review should give paramount consideration to the reasonableness of the basis underlying the state claim. Where applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent." *Id.* at 810. But if there is a "colorable cause of action-that is, if the state law *might* impose liability on the resident defendant under the facts alleged-then there is no fraudulent joinder." *Id.* (emphasis in original).

---

[5] As another judge in this district has recognized, there "is a split of authority regarding whether a Magistrate Judge's decision on a motion to remand is dispositive or nondispositive for purposes of review by an Art. III judge." *Misle Properties, LLC v. LBUBS 2004-C2 Cranberry Retail GP, LLC,* 2018 WL 6831161, at *1 n.2 (D. Neb. Dec. 27, 2018). "[M]any courts have concluded that such an order is effectively dispositive." *See id.* (collecting cases). So out of caution, the Court has reviewed the Magistrate Judge's Findings and Recommendation de novo.

Put differently, "joinder is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." *Id.* And as the Magistrate Judge explained, in reviewing a fraudulent joinder challenge, "the district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." *Id.* at 811. The language that the ADM defendants dispute, then, comes from *Filla* itself.

Those propositions have been reaffirmed—over challenges—by the Eighth Circuit on several occasions. *See, e.g., Knudson v. Sys. Painters, Inc.,* 634 F.3d 968, 979 (8th Cir. 2011) (holding that "*Filla* and its progeny provide the appropriate standard" for evaluating fraudulent joinder); *Junk v. Terminix Int'l Co.,* 628 F.3d 439, 446 (8th Cir. 2010) ("We therefore review the district court's denial of remand under the *Filla* standard . . . Joinder is not fraudulent where "there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved."); *Block v. Toyota Motor Corp.*, 665 F.3d 944, 948 (8th Cir. 2011) (citing *Filla*).

Thus, the Magistrate Judge did not apply the wrong standard. The Court sees no inconsistencies between the ADM defendants' cribbed "standard" and the complete *Filla* standard, either[6]—if there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved, then the plaintiff's claim has a reasonable basis in fact or law, and joinder is not fraudulent. If there is no arguable basis for liability, however, it follows that the claim has no reasonable basis in fact or law, and joinder *is* fraudulent. And as to the ADM defendants' complaint that the *Filla* standard gives the plaintiff additional benefit of the doubt, the plaintiff correctly notes that plaintiffs *already* get that: "*All doubts* about federal jurisdiction should be resolved in favor of remand to state court." *Junk,* 628 F.3d at 446 (emphasis added); *see also Filla,* 336 F.3d at 811 ("[T]he district court should resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor."). The Court sees no error in how the Magistrate Judge formulated the applicable rules.

---

[6] Indeed, the language of both "standards" comes from the same case, and the case relied on by the ADM defendants—*Halsey v. Townsend Corp. of Indiana*—cited *Filla*. *See* 20 F.4th 1222, 1226 ("Joinder is not fraudulent if state law might impose liability on the resident defendant under the facts alleged.").

*Second,* both BNSF and the ADM defendants take issue with the Magistrate Judge's determination that it would be "improper" to look beyond the allegations of the operative complaint in "determining the issue of fraudulent joinder." (Filing No. 41 at 6). The Court agrees with the Magistrate Judge, however, for several reasons.

First among them is that cases like *Anderson v. Home Ins. Co.*, 724 F.2d 82 (8th Cir. 1983) support the Magistrate Judge's decision. There, the Eighth Circuit held that "[f]raudulent joinder exists if, *on the face of plaintiff's state court pleadings*, no cause of action lies against the resident defendant." *Id.* at 84 (emphasis added). Many district courts in this circuit have accordingly limited their analysis to the pleadings. "In the fraudulent joinder context, neither the Eighth Circuit nor the Supreme Court have approved of using documents outside the pleadings in order to evaluate whether a plaintiff can establish a claim against a diversity-destroying defendant." *Dillard v. Silvercote, LLC*, 2018 WL 2364281, at *4 (E.D. Mo. May 24, 2018) (collecting cases).

The Court finds the analysis in those cases persuasive. Examining summary judgment-like evidence at this stage could lead to a premature merits decision, which would itself be improper. *See, e.g., Wright Construction Services, Inc. v. Liberty Mutual Insurance Company*, 2018 WL 3458703, *3 (E.D. Mo. 2018) ("[I]n ruling on the issue of fraudulent joinder, a district court does not have the power to decide the merits of a case."); *Arenivar v. Manganaro Midatlantic, LLC*, 317 F. Supp. 3d 362, 368 (D.D.C. 2018) (stating that the fraudulent joinder inquiry does not entail "delv[ing] into the legal and factual thicket of a merits analysis").

Further, while it's true that the Eighth Circuit has seemingly recognized that courts *can* examine material beyond the complaint's allegations in reviewing fraudulent joinder, that optional examination is not unlimited. In *Block,* the Eighth Circuit only said that "some courts" go beyond the complaint "*to determine if there is any factual support for the claims* against the allegedly fraudulently joined defendant." 665 F.3d at 948 (emphasis added) (internal citation omitted); *see also Banbury v. Omnitrition Int'l, Inc.*, 818 F. Supp. 276, 280 (D. Minn. 1993) ("Even assuming that some piercing is appropriate in determining whether the plaintiffs have asserted a colorable claim against the joined individual defendants, that inquiry is different from the extensive analysis the defendants urge the court to undertake."). Looking for factual support for the plaintiff's negligence claims in extrinsic material is quite different from reviewing bankruptcy filings, affidavits, discovery responses, and the like to determine whether that claim is precluded.

At bottom, the Court sees no error in the Magistrate Judge's threshold decision to limit the analysis to the face of the plaintiff's state court complaint.[7] That is what cases like *Anderson* instructs district courts to do, and neither BNSF nor the ADM defendants have persuaded the Court that a summary judgment-style examination of evidence would be appropriate here. The Court therefore overrules these objections as well.

*Third,* both BNSF and the ADM defendants fault the Magistrate Judge for not actually deciding whether the Discharge Order extinguished the plaintiff's claims against Aguallo. (Filing No. 47 at 7; Filing No. 44 at 6). They seek a fuller analysis of the impact of Aguallo's bankruptcy on the plaintiff's claim and insist that this Court must "resolve" the circuit split on that issue. The Court again disagrees.

Eighth Circuit precedent forecloses BNSF and the ADM defendants' arguments. In a district court's "review of a fraudulent joinder claim, the court has no responsibility to *definitively* settle the ambiguous question of state law." *Filla,* 336 F.3d at 811 (emphasis in original). "Instead, the court must simply determine whether there is a reasonable basis for predicting that the state's law might impose liability against the defendant." *Id.* That determination "is the essential function required of the district court in a fraudulent-joinder setting." *Id.* "[I]n situations where the sufficiency of the complaint against the non-diverse defendant is questionable, the better practice is for the federal court not to decide the doubtful question in connection with a motion to remand but simply to remand the case and leave the question for the state courts to decide." *Id.* (internal quotations omitted). That is precisely the situation presented here.

The Court sees no error in the Magistrate Judge's analysis. If the fraudulent joinder evaluation is limited to the face of the plaintiff's complaint (and the bankruptcy issue is not considered) or if, as some courts have found, an unlisted creditor's claims are not discharged by operation of law,[8] or if the plaintiff can bring a negligence claim for the purposes of establishing

---

[7] For the sake of completeness, the Magistrate Judge nevertheless proceeded to consider the extrinsic materials relied on by BNSF and the ADM defendants anyway and reached the same conclusion—that there was no fraudulent joinder. (Filing No. 44 at 7-9). So even if it *was* error not to consider those materials, that error was harmless.

[8] *See, e.g., Colonial Surety Co. v. Weizman,* 564 F.3d 526 (1st Cir. 2009); *In re Faden,* 96 F.3d 792, 797 (5th Cir. 1996); *In re Stark,* 717 F.2d 322 (7th Cir. 1983); *In re Baitcher,* 781 F.2d 1529, 1534 (11th Cir. 1986).

Aguallo's liability even if the claim were discharged,[9] then the plaintiff's negligence claim against Aguallo can proceed. No "precedent [would] preclude[ ] the existence of a cause of action against" her. *Id* at 810. In any of those scenarios, there is at least a "reasonable basis for predicting that the state's law might impose liability against [Aguallo]." *Filla, Id.* at 811.

That was as far as the Magistrate Judge needed to go. There was no error in declining to fully "decide [a] doubtful question in connection with a motion to remand[.]" *Id.* The Court therefore agrees that "remand[ing] the case and leav[ing] the question for the state courts to decide" is the right call here. *Id.* That is especially true given that the Court "should resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor." *Id.*

*Fourth,* and final, BNSF and the ADM defendants argue that the Magistrate Judge erred in declining to realign Aguallo as a plaintiff for jurisdictional purposes. "In deciding whether to realign the parties, the Eighth Circuit applies the 'actual and substantial conflict' test." *Interlachen Properties, LLC v. State Auto Ins. Co.*, 136 F. Supp. 3d 1061, 1067 (D. Minn. 2015) (quoting *Universal Underwriters Ins. Co. v. Wagner*, 367 F.2d 866, 870–71 (8th Cir. 1966)). That test asks whether there is "any actual and substantial conflict existing between the parties as aligned." *Id.* (internal quotation marks omitted). If that conflict exists, the court should not realign the parties. *Id.*

BNSF and the ADM defendants do not think that such a conflict between the plaintiff and Aguallo exists. Specifically, they argue that the Magistrate Judge ignored or failed to give proper weight to facts like Aguallo's crossclaim seeking damages for Behrens' care, that Aguallo is Behrens' parent and caregiver, and the plaintiff's attorney's attestation that Aguallo was named as a defendant to increase the plaintiff's chances of recovery at trial under principles of joint and

---

[9] "It is well established that [11 U.S.C. § 524(e)] permits a creditor to bring or continue an action directly against the debtor for the purpose of establishing the debtor's liability when, as here, establishment of that liability is a prerequisite to recovery from another entity." *In re Walker*, 927 F.2d 1138, 1142 (10th Cir. 1991); *see also In re Patterson*, 297 B.R. 110, 113 (Bankr. E.D. Tenn. 2003) ("[T]he case law is quite clear that, pursuant to § 524(e), a creditor does not violate the discharge injunction by proceeding in a lawsuit against a debtor in order to determine liability for the purposes of collecting from a third party, such as an insurance carrier.").

several liability. (Filing No. 44 at 7; Filing No. 47 at 8-9). The Court has carefully considered those arguments and is unpersuaded.[10]

The Court agrees that there is an actual and substantial conflict between the plaintiff and Aguallo. To be sure, this case presents the relatively uncommon scenario of a minor child suing her own parent and caregiver. But the requisite conflict is nevertheless present. In the operative complaint, the plaintiff alleges that Aguallo "breached [her] duty [toward Behrens] and was negligent" in several ways. (Filing No. 1-1 at 214). The plaintiff alleges that those negligent acts subject Aguallo to "joint and several liability" with the other defendants. (Filing No. 1-1 at 214). Aguallo denies that "any alleged act or omission of negligence on the part of her own proximately caused injury to Behren[s]." (Filing No. 1-2 at 76). Those allegations create an "actual and substantial conflict existing between the parties as aligned"—the plaintiff believes Aguallo (the driver of the car involved) bears some fault for the accident, while Aguallo disagrees. *Interlachen Properties, LLC,* 136 F. Supp. 3d at 1067. That is something more than an "academic or theoretical conflict," even if Aguallo is *also* seeking some damages against BNSF and the ADM defendants that the plaintiff wants to recover. (Filing No. 44 at 7).

It is probably unlikely, as the ADM defendants point out, that the plaintiff intends to recover "damages from [Behrens'] sole guardian and caretaker" should the plaintiff prevail at trial. (Filing No. 44 at 8). Still, Aguallo's inclusion in this case was for legitimate strategic reasons. As the Magistrate Judge explained, the plaintiff "has an actual and substantial interest in proving Aguallo's negligence, in addition to the Removing Defendants, because they would be held jointly and severally liable for economic damages, entitling Plaintiff to complete monetary relief." (Filing No. 41 at 10); *see* Neb. Rev. Stat. § 25-21,185.10.

In sum, the Court agrees that Aguallo should not be realigned as a plaintiff for jurisdictional purposes. By virtue of the plaintiff's negligence claim against Aguallo—and Aguallo's denial that

---

[10] There is also the threshold issue that BNSF and the ADM defendants may be unable to seek remand through realignment after they failed to show that the non-diverse defendant has been fraudulently joined. *See, e.g., Filla,* 336 F.3d at 809 ("When, as here, the respondent has joined a non-diverse party as a defendant in its state case, the petitioner may avoid remand—in the absence of a substantial-federal question—*only* by demonstrating that the non-diverse party was fraudulently joined.") (emphasis added). There is a split of authority on this issue. *See Interlachen Properties,* 136 F.Supp.3d at 1067-70. The Court need not weigh in on it, however, because it finds that realignment is not warranted here.

she was negligent—an actual and substantial conflict exists between the two. The Magistrate Judge did not err in so finding. Accordingly,

**IT IS ORDERED:**

1. BNSF and the ADM defendants' Statements of Objections to the Magistrate Judge's Findings and Recommendations (Filing No. 46; Filing No. 43) are overruled.
2. The Magistrate Judge's Findings and Recommendation (Filing No. 41) is adopted.
3. The plaintiff's motion to remand (Filing No. 22) is granted.
4. This case is remanded to the District Court of Lancaster County, Nebraska.
5. BNSF's motion to dismiss its crossclaim against Aguallo (Filing No. 9) is denied as moot.
6. BNSF and the ADM defendants' motions for hearing (Filing No. 48; Filing No. 45) are denied as moot.

Dated this 13th day of March, 2025.

BY THE COURT:

_____
Susan M. Bazis
United States District Judge